SO ORDERED: March 12, 2010.



_____
Anthony J. Metz III
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| ROBERT HAROLD POWERS | ) CASE NO. 09-18607-AJM-13 |
| | ) |
| Debtor | ) |

**ORDER DENYING SANCTIONS AGAINST JULIE POWERS AND KELLY PAGE**

The Debtor filed his chapter 13 case on December 29, 2009. The Debtor and Julie Lane Powers ("Julie") are divorced, and their respective obligations regarding property and support are set forth in the "Consent Judgment of Divorce" decree (the "Decree") approved by Judge Paul E. Hamre of Van Buren County (Michigan) Circuit Court (the "State Court") on August 4, 2008. The Debtor's chapter 13 plan was filed on February 25, 2010 and, under paragraph 5 entitled "Domestic Support Obligations", the Debtor listed "-None-". In this Schedule F (Creditors Holding Unsecured Nonpriority Claims), the Debtor scheduled Julie twice, once in care of her divorce attorney, Kelly L. Page and also at her Red Oak, Texas address. Both listed the debt owed as "0" or

"unknown"; one of the claims was listed as "unliquidated", the other was listed as "disputed".

Since the filing of this chapter 13 case, Julie twice has returned to the state court to enforce certain provisions of the Decree. On January 13, 2010, and before he filed either his bankruptcy schedules or his chapter 13 plan, the Debtor filed his "Emergency Motion for Order to Show Cause why Sanctions Should Not Be Granted", alleging that Julie attempted in the State Court to collect pre petition spousal support in violation of the stay. As a result of hearing on that emergency motion, the Court, without the benefit of having a copy of the Decree or the Debtor's chapter 13 plan, entered an order on January 22nd generally staying actions to collect pre petition support.

The Debtor filed his second "Emergency Motion for Order to Show Cause Why Sanctions Should Not Be Granted" on March 8, 2010. This second motion likewise alleges that Julie violated the automatic stay by seeking to enforce provisions of the Decree. A hearing on that emergency motion was held on March 10, 2010 wherein the Debtor appeared in person and by counsel, John McManus. Julie appeared by counsel, Kelly L. Page (telephonically) and James Young.

The Court obtained a copy of the Decree prior to the March 10th hearing. The debt that Julie seeks to collect in State Court is provided for in the section of the Decree denominated "Alimony" which says that the Debtor shall pay to Julie "for her support and maintenance" the sum of $700 per week for 208 weeks (the "spousal support"), commencing August 1, 2008. This provision labels this payment as "spousal support" and says that such payment is "non-modifiable". The paragraph also provides that payment of spousal support terminates upon Julie's death, her remarriage or the

termination of 208 weeks, whatever occurs first.  There is a separate section in the Decree entitled "Marital Debt" which provides that the Debtor was to assume and hold Julie harmless with respect to certain credit card debt [1] (the "Credit Card Debt").

Another section of the Decree entitled "Assumption of Debt / Preservation of Spousal Support (Anti-Bankruptcy Clause)", provides that "...it is the express intention of the parties that this distribution of debt is intended to provide both parties with the ability to support themselves without any direct spousal support payment by either party *(except as may be otherwise set forth herein)*." (Italics added).  The Debtor interprets the Decree in general and this section in particular as providing that his obligation to pay spousal support is contingent upon his failure to pay the Credit Card debt - e.g. that the spousal support is payable *only if and when* he fails to pay the Credit Card Debt.  Because he has separately classified and provided for full payment of the Credit Card Debt in his chapter 13 plan, the Debtor argues that the contingency will not be triggered, and thus, he owes no support obligation.

Apparently, the Debtor does not contest the fact that the $700 monthly payment is in the nature of support; he merely contests the fact that the debt is owed.  When it entered its January 22nd order, the Court was of the belief that the Debtor thought of $700 monthly payment as property settlement.  Regardless, the Court, after reviewing the Decree, believes that the monthly $700 payment is a debt in the nature of support.  The Decree specifically states that monthly $700 payment to be paid by the Debtor is for "support and maintenance".  This sum is to be paid over a 208-week period, thus, it

---

[1] The credit card debt that was to be assumed by the Debtor was debt owing to (1) Chase ($10,000); (2) Citibank World Mastercard ($33,000); (3) Chase Business Card ($30,000); (4) Ford Credit (son's 2004 Ford Truck) ($11,984.44) and (5) American Express ($2200).  Paragraph 9 (a) of the Debtor's chapter 13 plan filed on February 25, 2010 provides for full payment of all but the Ford Credit debt.

is implicit that it is to be paid from the Debtor's future income. Payments terminate upon Julie's remarriage or death, or 208 months, whichever comes first. There is no established lump sum to be paid to Julie, and she could be paid less than 208 weeks' worth if she remarries or dies before the expiration of the 208 week period. The section does not provide that, if Julie dies before the expiration of the 208 week period, the remaining support due is to be paid to her estate. There is no interest running with the monthly payment. There is no indication in the "Alimony" section or otherwise in the Decree that this debt was created to balance out the property awarded to the Debtor. Thus, in this Court's opinion, the $700 monthly payment obligation has all the characteristics of debt for support, not property settlement. However, the parties are free to return to the State Court for a determination of whether this debt is in the nature of support or property settlement.

     More importantly, the Court's review of the Decree leads it to conclude that payment of spousal support is *not* contingent upon the Debtor's failure to pay the Credit Card Debt, because neither the "Alimony", the "Anti Bankruptcy Clause" nor the "Marital Debt" sections of the Decree so provide. The "Alimony" section in which the spousal support payments are mentioned does not say that such payments shall not be paid as long as the Debtor pays the Credit Card Debt provided for in the "Marital Debt" section. Nor do the "Marital Debt" or the "Anti Bankruptcy Clause" sections provide that no spousal support is owed as long as the Debtor pays the Credit Card Debt. The "Anti Bankruptcy Clause" section does say that the distribution of debt was intended to provide both the Debtor and Julie with the ability to support themselves without any direct spousal support payment by either party, but this sentence is then modified by the

phrase "except as may be otherwise set forth herein". The "otherwise", of course, is the "Alimony" section provision for payment of the spousal support. Thus, spousal support is owed under the Decree, in addition to the Debtor's assumption of the Credit Card Debt.

Thus, the debt Julie attempts to collect in State Court is in the nature of support, and therefore the Court at this juncture will not stay further collection proceedings by Julie. The January 22nd order was entered on the premise that this debt had been provided for in the chapter 13 plan and that the plan had been confirmed. That was not the case. Rather, the debt owed to Julie appears to be in the nature of support, and thus, a "domestic support obligation" entitled to special protection under BAPCPA. [2]

As stated in my *Worland* opinion, attached (in which Debtor's counsel represented the debtor in that case), BAPCPA greatly enhanced a claimants' ability to collect support. Under BAPCPA, even property of the estate can be the subject of an income withholding order as long as it is for payment of a domestic support obligation, without violating the stay. 11 U.S.C. §362 (b)(2)(C). Because the definition of "domestic support obligation" is broadly defined to include a spousal support debt that "accrues before, on or after" the date of the order for relief, §362(b)(2)(C) excepts from the stay income withholding orders imposed before, on or after the filing date. *In re Gellington*, 363 B.R. 497, 501-02 (Bankr. N. D. Tex. 2007); *In re Worland*, 2009 WL 1707512 (Bankr. S. D. Ind.) The creditor's collection activities in *Worland* were not stayed but *were* in violation of the order confirming the debtor's chapter 13 plan since payment of the ex spouse's claim in that case was provided for in the plan.

---

[2] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, effective October 17, 2005.

Here, there is no confirmed plan. That leaves just the alleged violation of the automatic stay argument, and, as BAPCPA provides in §362(b)(2)(C), actions to collect a domestic support obligation are not stayed. Since the automatic stay has not been violated, sanctions are not warranted. To the extent this Court's January 22nd order provides that Julie's collection activities of the debt provided for in the Decree are stayed, it is vacated.

### # # #

Distribution:

The Honorable Paul E. Hamre, Judge, Van Buren County Circuit Court
John McManus, Attorney for the Debtor
James Young, Attorney for Julie Powers
Kelly L. Page, Attorney for Julie Powers

Westlaw.

Slip Copy, 2009 WL 1707512 (Bkrtcy.S.D.Ind.)
(Cite as: 2009 WL 1707512 (Bkrtcy.S.D.Ind.))

Page 1

Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States Bankruptcy Court,
S.D. Indiana,
Indianapolis Division.
In re Barry Wayne **WORLAND**, Kimberly Joy **Worland**, Debtors.
No. 08-2148-AJM-13.

June 16, 2009.

John McManus, Attorney for the Debtors.

Elisha M. Comer, Deputy Prosecuting Attorney, for MCPO.

### ORDER DENYING DEBTORS' AMENDED MOTION FOR SANCTIONS

ANTHONY J. METZ III, Bankruptcy Judge.

*1 The Debtors filed this chapter 13 case on March 4, 2008. Debtor Barry Worland's ("Barry") child support debt owed to Cindy Baugher was scheduled as an unsecured priority debt in the amount of $14,221.00 Cindy Baugher filed a proof of claim for $14,765. The Debtors' chapter 13 plan was confirmed on December 23, 2008 and proposes to pay a base of no less than $52,465 over 60 months, with Cindy Baugher's child support claim valued at $14,766 and paid in full through the plan as a priority claim.

The Debtors were entitled to a $400 refund for tax year 2008. The Marion County Prosecutor's Office, Child Support Division ("MCPO") intercepted the tax refund and garnished Barry's wages. The Debtors then moved on a emergency basis for the turnover of the tax refund check and for the release of the garnished wages. As a result of the emergency hearing held on April 21st, the Court ordered MCPO to cease the wage garnishment and to release the garnished wages and set May 8th as the hearing date to consider turnover of the tax refund check. The MPCO on April 24th notified Barry's employer to terminate the wage garnishment.

The tax refund check was being held by an entity responsible for tracking child support payments. As a result of the May 8th hearing and proceedings that followed, the MCPO on May 11th directed the tracking entity to release the refund to Barry. The Debtors requested sanctions against the MCPO and the Court took that matter under advisement. After the May 8th hearing, the Court established May 26th as the deadline by which the parties could submit citation of legal authorities in support of their respective positions. The MCPO filed its brief in opposition to sanctions on May 26th; the Debtors requested and received an extension up to and including June 4th. No brief or citation of legal authorities has been filed by the Debtors.[FN1]

> FN1. This order constitutes findings of fact and conclusions of law to the extent required under Fed. R. Bankr.P. 7052.

### *Discussion*

The Debtors maintain that the MCPO violated both the automatic stay and the confirmation order in intercepting the refund and garnishing Barry's wages. The debt for which the refund was intercepted and the wages garnished is a debt for past due child support, a "domestic support obligation". See 11 U.S.C. § 101(14A).[FN2] Under pre-BAPCPA [FN3] law, the holder of a child support claim could continue to collect support post filing without violating the stay as long as the amounts collected were not "property of the estate". In the case of a confirmed chapter 13 plan, post petition wages that were not necessary to fund the plan were no longer "property of the estate" and therefore a support claimant

Slip Copy, 2009 WL 1707512 (Bkrtcy.S.D.Ind.)
(Cite as: 2009 WL 1707512 (Bkrtcy.S.D.Ind.))

Page 2

could pursue those assets without running afoul of the automatic stay. *In re Heath,* 115 F.3d. 521 (7th Cir.1997). The Debtors' motion for sanctions does not expound on whether the garnished wages and the tax refund were necessary to fund the plan (and hence, were property of the estate), but such is a moot point, given BAPCPA's changes to Section 362.

> FN2. Section 101(14A) defines "domestic support obligation" in part as "a debt that accrues before, on or after the date of the order for relief in a case under this title .... owed to over recoverable by ....a spouse, former spouse, or child of the debtor ... in the nature of alimony, maintenance or support ... of such spouse, former spouse, or child.. established or subject to establishment before, on or after the date of the order for relief in a case under this title..by reason of applicable provisions of ... a separation agreement, divorce decree, or property settlement agreement ...".

> FN3. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. Most provisions of BAPCPA became effective on October 17, 2005.

*2 BAPCPA greatly enhanced a claimants' ability to collect child support. Under BAPCPA, even property of the estate can be the subject of an income withholding order as long as it is for payment of a domestic support obligation, without violating the stay. 11 U.S.C. § 362(b)(2)(C). Because the definition of "domestic support obligation" is broadly defined to include a child support debt that "accrues before, on or after" the date of the order for relief, § 362(b)(2)(C) excepts from the stay income withholding orders imposed before, on or after the filing date. *In re Gellington,* 363 B.R. 497, 501-02 (Bankr.N. D.Tex.2007). Furthermore, Section 362(b)(2)(F) excepts from the stay the intercept of a tax refund for the payment of a court-ordered child support obligation. MCPO's intercept of the tax refund and garnishment of Barry's wages did not violate the automatic stay since such acts are excepted from the stay under § 362(b)(2)(C) and (F).

MCPO's actions did not violate the automatic stay, but they did violate the confirmation order. Neither the confirmed plan nor the confirmation order provides for the MCPO to garnish Barry's wages or intercept the Debtors' tax refund as a method of satisfying the support claim. Rather, the confirmed plan clearly provides for the full payment of the support claim through the plan. Under § 1327(a), the provisions of a confirmed plan bind all creditors regardless of whether they objected to confirmation, and neither Cindy Baugher nor the MCPO objected to confirmation of the plan.

Despite the violation, the MCPO argues that it proceeded in good faith in that it relied on the § 362(b)(2)(C) and (F) stay exceptions. Furthermore, the MCPO argues in its brief that it had "no opportunity to attempt to resolve the situation" prior to the May 8th hearing because the Debtors' attorney did not contact MCPO before filing the motion for sanctions, turnover of the refund, and release of the garnished wages. MCPO notes that it promptly requested termination of the wage garnishment once it received the Court's April 22nd order. Shortly thereafter, on May 11th, it requested the tax refund to be returned to Barry and such was done on May 12th.

The Court finds that no sanction should be issued for MCPO's violation of the confirmation order. MPCO justifiably believed that its actions did not violate the automatic stay, and in fact, they did not violate the stay. Furthermore, MCPO acted promptly to terminate the wage garnishment and recover the tax refund check for Barry once it received the Court's orders as a result of the April 21st and May 8th hearings. Sanctions are not warranted and none will be awarded. The MCPO's timely return of the refund check and termination of the wage garnishment suffices. See, *Gellington,* 363 B.R at 502-03.[FN4]

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1707512 (Bkrtcy.S.D.Ind.)
(Cite as: 2009 WL 1707512 (Bkrtcy.S.D.Ind.))

Page 3

FN4. In the May 8th hearing, the Debtors submitted a copy of the case of *In re Dagen,* 386 B.R. 777 (Bankr.D.Co.2008) for the Court's consideration, but that case does not help the Debtors' cause. Despite the *Dagen* opinion having been issued in 2008, the debtor in Dagen filed his bankruptcy case in April, 2005 and therefore the provisions of BAPCPA did not apply. Like the case at bar, *Dagen* involved a debtor whose confirmed plan provided for full payment of a past due support obligation through the plan. However, unlike the case here, the debtor in *Dagen* continued to accrue post petition support obligations. After confirmation, the support claimant moved for and obtained limited relief from stay but the order granting such relief clearly provided that, while the claimant could go back to divorce court to obtain an order regarding division of property, she could not institute collection proceedings to enforce that order. The support claimant notified the child support enforcement agency of the insurance company making the debtor's disability payments. Those payments were garnished and applied to prepetition support debt. The debtor sought sanctions against the support claimant for causing the wage garnishment to be issued. The court determined that the automatic stay barred collection of support debts only as to property of the estate. The court adopted the "estate termination approach", meaning that, upon confirmation of a chapter 13 plan, all property revests with the debtor and the estate is terminated. Because the wages collected were no longer property of the estate, the support claimant did not violate the stay. However, the support claimant was found to be in violation of the confirmation order, but was not sanctioned. Instead, the Court allowed the claimant either to disgorge that which had been collected in payment of the prepetition claim, or apply it to her post petition claim. The court likewise noted that neither the automatic stay nor the confirmation order barred the support claimant from collecting post petition support.

Bkrtcy.S.D.Ind.,2009.
In re Worland
Slip Copy, 2009 WL 1707512 (Bkrtcy.S.D.Ind.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.